# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0272
Filed May 13, 2026

———————————

**In the Interest of S.S. and S.S., Minor Children,**

**M.S., Mother,**
Appellant,

**K.W., Mother,**
Appellant,

**B.S., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Monroe County,
The Honorable Richelle Mahaffey, Judge.

———————————

**AFFIRMED ON ALL APPEALS**

———————————

Dusty Lea Clements of Clements Law & Mediation, Newton, attorney for
appellant mother M.S.

Julie De Vries of De Vries Law Office, PLC, Centerville, attorney for
appellant mother K.W.

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, attorney for
appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor children.

————————————

Considered without oral argument
by Tabor, C.J., and Langholz and Sandy, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A father and the mothers of each of his two daughters all separately appeal the juvenile court's order terminating their respective parental rights to the daughters. In early October 2024, the daughters—nine and one at the time—were living with the father and the mother of the younger daughter. The mother of the older daughter was in prison. And after the Iowa Department of Health and Human Services ("HHS") received allegations that the father and younger daughter's mother were using methamphetamine in the family home, they refused drug tests and a safety plan, and sores were observed on the mother's face, the children were removed and each placed with fictive kin.

The father was incarcerated a few months later and remained in jail or prison throughout the case. The younger daughter's mother was in and out of jail and, as of the January 2026 termination hearing, still had unresolved criminal matters and substance-use issues. And while the older daughter's mother was released from prison in early 2025 and made some inconsistent progress, she too continued to have substance-use issues and was in a residential treatment facility. Even so, the oldest daughter has a strong bond with her parents—especially her mother—and made a statement to the court at the start of the termination hearing that she wanted to live with her mom.

The juvenile court ultimately terminated the parental rights of all three parents. And on our de novo review, we agree. While each parent challenges different aspects of the termination order, the bottom line is the same. The children could not be safely returned to any of the parents. And it is in the best interests for both daughters to achieve permanency and stability through termination of parental rights rather than any of the other options proposed by the parents. We thus affirm the juvenile court's termination order.

## I. Background Facts and Proceedings

This family first came to the attention of HHS in October 2024 when it was reported that the father and the mother of the younger daughter—who were married and living together with both children at the time—were using methamphetamine.[1] An HHS worker received a message with an image of a needle in a toilet and an allegation that drugs were being used inside the family's home. The worker made an unannounced visit to the home the next day and asked the parents about the needle. The younger daughter's mother blamed her mother, saying she "must have planted it there" and refused to participate in a safety plan or engage in drug testing. The worker also noticed "several sores on [the mother's] face."

The juvenile court issued an ex parte order to remove the children from the home a few days later. The parents initially fled with the children but returned to the area a few days later, and the children were placed in the temporary custody of HHS. After an uncontested December hearing, the court adjudicated the children to be in need of assistance and continued their removal. Then in late January 2025—just a few months after the removal—the father and the younger daughter's mother were arrested on numerous charges, including drug-related offenses.

The father has remained incarcerated since that arrest and was in prison at the time of the termination hearing. The younger daughter's

---

[1] The mother of the younger daughter also has a son who was living with the family but is now on an "extended home visit with his father in Oregon." This termination proceeding did not involve the mother's parental rights to the son.

We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

mother was released a few days after the arrest. But she failed to complete in-patient treatment and was in and out of jail until June 2025 when she entered a new treatment center. She had supervised visits during that stretch that went well. She then graduated successfully from the treatment center that June. She also began taking medications and participated in mental health services. She obtained employment. And she was living with her mother.

In mid-September the younger daughter's mother was asked to complete a drug test. Although the HHS worker offered to take her to the testing center, she did not complete the test because she said she could not find a ride back. She was again asked to complete a drug test the next day but again refused for lack of transportation. Then she relapsed, using methamphetamine in late November and early December. And she was arrested in early January 2026 on drug-related charges. This arrest triggered a probation revocation, and she admitted she knew of two warrants for her arrest at the time of the termination hearing in mid-January 2026.

Meanwhile, since before the children were removed, the mother of the older daughter had been in prison for using her vehicle as a weapon against two individuals in 2023. She was released from prison in early February 2025. She moved into transitional housing, found employment, and within a month secured a residence of her own. From there, she began having supervised visits with the older daughter. She started participating in services and got a second job. The visits with her child were going well and in May 2025, they moved from supervised to semi-supervised. And by August the older daughter's mother was receiving overnight visits with the hope that the child would soon return to her care. In total, the mother had about "four or five overnights" with the oldest daughter.

But in mid-September, she was asked to do a same-day drug test. She refused but participated in one three days later. The test results were positive for methamphetamine and THC. Her visits with her child reverted to being fully supervised at neutral locations. And at some point, she lost her employment and housing. Just a week or so before the January 2026 termination hearing—she was again admitted to an in-patient substance abuse treatment facility.

After the two-day termination hearing, the juvenile court terminated the parental rights to the older daughter of the father and the older daughter's mother under paragraphs "e" and "f" of Iowa Code section 232.116(1) (2025). And it terminated the rights to the younger daughter of the father and younger daughter's mother under paragraphs "e" and "h" of Iowa Code section 232.116(1). The court also found that termination was in the daughters' best interests, reasoning:

> [T]he Court cannot conclude it is likely that in the foreseeable future [the parents] will be able to meet [the daughters'] need for safety, and stability, and their urgent need for permanent homes. As it stands today, the parents are no closer to reunification than when the HHS case opened fifteen months ago.

The court found that no permissive exceptions apply to preclude termination. And it declined to delay termination for six more months to work toward reunification. All three parents separately appeal.

## II.    The Father's Appeal as to Both Daughters

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And finally, the

6

parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.*; *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We need not address any steps not challenged by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). And here, the father challenges only the second and third steps. So we focus our analysis there. We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

*Best Interests.* The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the daughters' long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

At the time of the termination hearing, the father was in prison on drug-related and firearms convictions with a tentative discharge date over five years away in December 2031. His conduct while this case was pending that resulted in the imprisonment showed little prospect that he is addressing his substance-use issues or his history of criminal activity. And his daughters cannot sit in limbo for years while he is incarcerated to see whether he will be able to become the parent that they need now.

The father nevertheless argues that termination of his parental rights is not in the daughters' best interests mainly because "the children would lose the potential inheritance" of their grandfather's wealth, and because "retaining parental rights would be the only way to guarantee future contact

between the father and children"—something the older daughter desired. But neither of these factors preclude termination here.

The potential loss of financial support or an inheritance from the father's family is not a proper consideration in the best-interest analysis under chapter 232. *See In re H.S.*, 805 N.W.2d 737, 749 (Iowa 2011) ("[T]he anticipated loss of child support funds in and of themselves as a result of termination should not be part of the section 232.116(2) best interests analysis."); *see also In re S.G.*, No. 23-0682, 2023 WL 4756127, at *3 (Iowa Ct. App. July 26, 2023) (rejecting parent's argument that termination was not in the children's best interests because of loss of financial benefits, including inheritance); *In re H.S.*, No. 21-0440, 2021 WL 3074498, at *2 (Iowa Ct. App. July 21, 2021) (same); *In re W.M.*, No. 21-1336, 2022 WL 949750, at *4 (Iowa Ct. App. Mar. 30, 2022) (holding, even under chapter 600A where the fulfillment of financial obligations by a parent can be a consideration, that "the possibility that the children might someday inherit something from the paternal grandfather is too remote and speculative to preclude termination").

And while we can consider the older daughter's preferences in considering her best interest, *see* Iowa Code § 232.116(2), that does not outweigh the other primary considerations of the daughter's safety and long-term growth and development. We thus agree with the juvenile court that termination of the father's parental rights is in the children's best interests.

*Permissive Exceptions.* The father next argues that the court should have declined to terminate his parental rights under two permissive exceptions: the older daughter's objection and the bond he shares with both daughters. *See* Iowa Code § 232.116(3)(b), (c). The father had the burden to prove these

exceptions, and both are permissive. *See A.S.*, 906 N.W.2d at 475–76. We agree with the juvenile court that neither applies.

Starting with the child-objection exception, a court has discretion to decline termination if a child over the age of ten objects to the termination. *See* Iowa Code § 232.116(3)(b). Here, the older daughter was ten, and she made a statement to the juvenile court that "I would like to visit my dad." We question whether this statement rises to the level of an objection to termination. But regardless, our "overriding concern must" always be what is best for the daughter. *In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (cleaned up). So while we respect the older daughter's desire to have some continued relationship with the father, for the same reasons discussed above, termination of his parental rights is in her best interests.

The father has also failed to meet his burden to prove that the bond exception applies. *See* Iowa Code § 232.116(3)(c) (permitting courts to decline termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship"). While we have no doubt that the father loves his children and they love him, we agree with the juvenile court that the "detrimental effects of continued parental rights outweigh the effects of termination."

We thus affirm the termination of the father's parental rights to both daughters.

## III. The Mother of the Older Daughter's Appeal

The older daughter's mother raises four challenges on appeal. First, she argues that the State failed to prove a statutory ground for termination. Second, she argues that the State failed to prove that termination was in the older daughter's best interest. Third, she argues that the bond exception or

the child-objection exception should preclude termination. And fourth, she argues that the court should have established a guardianship rather than terminating her parental rights.

*Statutory Grounds.* The juvenile court terminated the mother of the older daughter's parental rights under paragraphs "e" and "f" of Iowa Code section 232.116(1). She challenges both grounds on appeal. But when the court terminates parental rights on more than one statutory ground, we may affirm the court's order on any ground we find supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). So we focus on paragraph "f."

The mother challenges only the last element under paragraph "f"— whether there was "clear and convincing evidence that at the present time the [older daughter] cannot be returned to the custody of" her mother. Iowa Code § 232.116(1)(f)(4). "At the present time means at the time of the termination hearing." *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (cleaned up). At the time of the hearing, the mother still had unaddressed substance-use issues. She had just recently moved into a residential substance-use treatment facility and had tested positive for methamphetamine and THC just a few months before. And even she agreed under questioning by the State that the court could not return the older daughter to her custody at that time. We thus agree with the juvenile court that the State proved by clear and convincing evidence that the older daughter could not be returned to her mother's custody.

*Best Interest.* The mother also disputes that termination is in the older daughter's best interest, pointing to the "positive relationship" that they share. We do not doubt that they have a strong bond—as evidenced by the then-ten-year-old daughter's brave decision to make a statement to the juvenile court about her desire to live with her mom. But even so, we must

focus on the safety and long-term growth of the daughter—who still has many years of childhood left with important physical, mental, and emotional needs. *See* Iowa Code § 232.116(2). And doing so, we agree with the juvenile court's conclusion that termination is in the daughter's best interest.

Although we commend the mother for taking a positive step to address her substance-use issues, and we hope that she will be successful, "we look to [a parent's] past performance because it may indicate the quality of care the parent is capable of providing in the future." *C.K.*, 558 N.W.2d at 172. The mother has a long history of substance use, has repeatedly relapsed, and ultimately renewed her efforts at treatment only just before the termination hearing. So we agree with the court's observation that "[t]here is little to no evidence" that she could "maintain [her] sobriety outside of residential treatment or incarceration." She has had repeated criminal convictions—indeed she was in prison when this case started. She has struggled to maintain employment and stable housing. And she admitted that she had not been the primary caretaker of her daughter for over three-and-a-half years—a third of the daughter's life—as of the hearing. Meanwhile, the older daughter is doing well in her new placement where she can have the permanent stability that she deserves now. At bottom, "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (cleaned up).

*Permissive Exceptions.* The mother next argues that the court should have declined to terminate her parental rights under two permissive exceptions: the older daughter's objection and the bond she shares with her daughter. *See* Iowa Code § 232.116(3)(b), (c).

11

First considering the child-objection exception, we recognize that the ten-year-old daughter told the juvenile court that she wanted to live with her mom. *See id.* § 232.116(3)(b). And we respect the daughter's wishes. But when weighing her objection, we may also consider factors including her age, the strength of her preference, her "intellectual and emotional make-up," her connection to other family members, and "the advisability of honoring [her] desire." *A.R.*, 932 N.W.2d at 592. And we must be mindful that a child's "yearning for reunification" does not necessarily "tilt the balance away from termination" because again, our "overriding concern must be the long-term best interest[]" of the daughter. *Id.* (cleaned up). Considering these factors, for the same reasons we found termination is in the older daughter's best interest, we agree that the exception does not apply.

Neither does the bond exception apply. *See* Iowa Code § 232.116(3)(c). While the mother and daughter undoubtedly have a bond, the mere existence of a bond is not enough to overcome termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The harms on delaying termination discussed above outweigh any detriment "due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). We thus agree with the juvenile court's decision not to apply this exception too.

*Guardianship.* Finally, the older daughter's mother argues that the juvenile court should have established a guardianship instead of terminating her parental rights. The mother concedes that we have much governing precedent that "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (cleaned up). This is because a guardianship often does not "achieve permanency" or stability because the court could terminate the guardianship or change the guardian at the parent's request or on its own motion. *Id.* at 478 (cleaned up). But the mother

contends that this case is different because the daughter was ten and thus would not have a guardianship as long as if she were only two. True enough, as a matter of mathematics. Yet we disagree that this makes the daughter "a prime candidate for guardianship." Establishing a guardianship rather than termination would still leave her in limbo until she turns eighteen—still almost 40% of her childhood. And we have disfavored guardianships for other similarly aged children. *See, e.g.*, *In re I.T. & A.M.*, No. 26-0483, 2026 WL ____, at *__ (Iowa Ct. App. May 13, 2026); *In re B.M.*, No. 25-1408, 2026 WL 380770, at *2 (Iowa Ct. App. Feb. 11, 2026) (rejecting guardianship for elementary-school-aged son because he "deserve[d] permanency"). And so, considering the daughter's age and the other factors already discussed weighing in favor of termination, we agree with the juvenile court that a guardianship would not be in the older daughter's best interest.

We thus affirm the termination of the parental rights of the older daughter's mother.

## IV.   The Mother of the Younger Daughter's Appeal

The younger daughter's mother raises three challenges. First, she argues that the State failed to prove statutory grounds for termination—although it is questionable whether she has properly challenged both grounds relied on by the juvenile court. Second, she argues that the State failed to prove termination was in the younger daughter's best interest. And third, she argues that the juvenile court should have granted her six more months to work toward reunification.

*Statutory Grounds.* The juvenile court terminated the parental rights of the younger daughter's mother under paragraphs "e" and "h" of section 232.116(1). Again, because we can affirm if either ground is supported by the record, we focus on paragraph "h." *See A.B.*, 815 N.W.2d at 774. In her

petition on appeal, the mother summarily says that the State failed to prove that ground—but all her argument seems to focus on the other ground. So the mother may have waived any challenge to paragraph "h," permitting us to affirm on that ground without further analysis. *See In re J.M.*, No. 25-2007, 2026 WL 685837, at *1 (Iowa Ct. App. Mar. 11, 2026).

But even assuming that the issue is properly before us, we agree with the juvenile court that the State proved that termination is appropriate under paragraph "h." The record is undisputed that the younger daughter was under three years old at the time of the hearing, was adjudicated in need of assistance, and had been removed from her mother's custody for at least the last six consecutive months—since the initial removal. *See* Iowa Code § 232.116(1)(h)(1)–(3). And we agree that clear and convincing evidence showed that the younger daughter could not be returned to her mother's custody at the time of the termination hearing. *See id.* § 232.116(1)(h)(4).

Just two weeks before the hearing, the mother was arrested on drug-related charges. She admitted to relapsing on methamphetamine. Her probation had been revoked, and she did not attend the termination hearing in part because she was aware of at least two active warrants for her arrest. She was homeless. And under questioning from the State, she agreed that she was not in a position to take care of her daughter at that time.

*Best Interest.* All that evidence also shows that termination of the mother's parental rights is in the younger daughter's best interest. Despite the case continuing for over a year, the younger daughter's mother had done little to address her substance-use issues. So too did she have unresolved criminal issues. The younger daughter was doing well in her placement. So we agree with the juvenile court that "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child,"

14

and "the physical, mental, and emotional condition and needs of the child" all weigh toward finding that termination is in the younger daughter's best interest. Iowa Code § 232.116(2).

*Additional Six Months.* Finally, the younger daughter's mother argues that the juvenile court should have given her six more months to work toward reunification rather than terminating her rights. *See* Iowa Code §§ 232.117(5), 232.104(2)(b). A court may give more time "only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). Given the lack of progress, and unaddressed drug use and criminal charges right up to the termination hearing, we see little prospect that the situation would be any different after another six months.

We thus affirm the termination of the parental rights of the younger daughter's mother.

**AFFIRMED ON ALL APPEALS.**